990 So.2d 1179 (2008)
Jorge CISNEROS, Appellant,
v.
The SCHOOL BOARD OF MIAMI-DADE COUNTY, Florida, Appellee.
No. 3D07-2960.
District Court of Appeal of Florida, Third District.
September 17, 2008.
*1180 Denise E. Kistner, Fort Lauderdale, for appellant.
Jean Marie Middleton and Ana I. Segura, Miami, for appellee.
Before GERSTEN, C.J., and ROTHENBERG and SALTER, JJ.
SALTER, J.
George Cisneros appeals a final order entered by the appellee, Miami-Dade School Board, dismissing him from his position as a high school teacher. The Board's order adopted the findings and recommendation of dismissal made by an Administrative Law Judge (ALJ). The issue below and here is whether Cisneros' *1181 plea of nolo contendere to a charge of vehicular homicide constituted a conviction for a crime involving moral turpitude. Because the final order reached issues that the parties had not submitted for hearing and did not enter any findings establishing "baseness, vileness or depravity" relating to the conviction, we reverse the School Board order of dismissal and remand the matter for Cisneros' reinstatement to his position.

Background
As memorialized in a joint stipulation submitted to the ALJ, Cisneros was hired as a teacher by Miami-Dade Public Schools in February 2000, some six months after he was involved in a "motor vehicle accident" in Monroe County, Florida (emphasis added). The stipulation recited that the "accident resulted in criminal charges filed against [Cisneros] for vehicular homicide (Section 782.071, Fla. Stat.)" (emphasis added); that in May 2002[1] Cisneros "pled no contest and was adjudicated guilty" of that offense; and that he was "placed on probation for five years, ordered to pay $50 costs per month for his suspension, and ordered to perform 500 hours of community service work."
A Florida Highway Patrol arrest affidavit, considered by the ALJ without objection, further discloses that the accident was attributed to reckless driving by Cisneros. The affidavit reports eyewitness accounts that Cisneros was jockeying for position and driving a van at speeds estimated to be at seventy-five miles per hour on a state road in the Keys, that he lost control of his vehicle, and that a seven year-old passenger in that car was ejected from the vehicle when Cisneros swerved off the roadway. Tragically, the child later died. Five other passengers were also injured. There is no indication that Cisneros was under the influence of drugs or alcohol, or that he intended to cause the accident or death.
Cisneros was charged with vehicular homicide, section 782.071, Florida Statutes (2000), some sixteen months after the accident. In March 2002, Cisneros entered his plea of nolo contendere and was sentenced to probation for five years. In March 2006, after six years of teaching high school, Cisneros was notified by the School Board of suspension and the initiation of dismissal proceedings "due to his conviction of a crime involving moral turpitude."[2]
By agreement, the ALJ reviewed only the joint written stipulation, certain exhibits, and proposed orders submitted by the School Board and Cisneros. No witnesses testified. The proposed order submitted by the School Board, ultimately entered by the ALJ, stated that the parties had agreed that the order would be limited to "the sole issue of whether [Cisneros] was convicted of a crime involving moral turpitude." That order nevertheless raised and decided other issues, eventually concluding that vehicular homicide was a crime of moral turpitude warranting the dismissal. The School Board then adopted the ALJ's ruling, and this appeal followed.

Analysis
The parties stipulated that one School Board Rule[3] defined vehicular homicide, section 782.071, as a crime of moral turpitude. As Cisneros points out, *1182 however, that rule pertains to applicants for employment found through pre-employment fingerprint processing to have been convicted of a crime. The pertinent rule defining "moral turpitude" for purposes of an already-employed teacher is Rule 6B-4.009(6) of the Florida Administrative Code:
(6) Moral turpitude is a crime that is evidenced by an act of baseness, vileness or depravity in the private and social duties, which, according to the accepted standards of the time a man owes to his or her fellow man or to society in general, and the doing of the act itself and not its prohibition by statute fixes the moral turpitude.[4]
The vehicular homicide statute, section 782.071, involves "the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another." The ALJ's sole charge, therefore, was to determine whether Cisneros's recklessness in the August 1999 accident was base, vile, or depraved according to the standards of the time. In making this assessment, the ALJ had no competent evidence to support a finding of moral turpitude. The information in the arrest affidavit certainly reports recklessness, a lack of care, and perhaps even foolhardy behavior. But "moral turpitude" seems to invoke something at a different quantum level. Turning the pages of a good unabridged dictionary for approximations of the three terms used in Rule 6B-4.009(6)'s definition of moral turpitude, we find such descriptions as "lacking values," "untrustworthy," "despicable," "cruel," "treacherous," and "vulgar" for "base"; "morally despicable" or "abhorrent" for "vile"; and "corrupt" or "perverted" for "depraved." These synonyms clearly do not describe the tragic, but apparently accidental, unintended consequences of Cisneros's driving behavior that summer day.
The Florida Division of Administrative Hearings considered this very question in Gage v. Department of Professional Regulation, No. 82-624, LEXIS 5572, at *1 (Fla. Div. Admin. Hear. October 29, 1982). In that case, the applicant for a real estate salesperson's license had entered a plea of nolo contendere to a charge of vehicular homicide in 1980. The initial charges in that case also included driving while intoxicated, although that was later dropped. The Division held that "vehicular homicide does not fit within that category of offenses recognized as crimes of moral turpitude, which have been defined as crimes having as their essential element the intent by the perpetrator to defraud or deceive another." Id. at *9 (citations omitted).
The final administrative order addresses statutes and matters exceeding the stipulated "sole issue of whether [Cisneros] was convicted of a crime involving moral turpitude." The statutes referred to in the final order were not part of the stipulation, and may or may not be applicable to this case, depending on such factors as whether Cisneros had a contract with the School Board or his school, or whether he was an "applicant" at or after the time his conviction was effective.[5]

*1183 Conclusion

As the ALJ properly found, the School Board had the burden of proving the allegations of moral turpitude by a preponderance of the evidence. Allen v. Sch. Bd. of Dade County, 571 So.2d 568, 569 (Fla. 3d DCA 1990). On the stipulated, limited record and narrow issue presented for determination, the School Board failed to carry that burden.
Order reversed and remanded for the entry of an order reinstating the appellant, and for other proceedings consistent with this opinion.
NOTES
[1] The written judgment of guilt and probation order actually indicate that the plea and conviction were entered in March 2002.
[2] This was also part of the joint stipulation submitted to the ALJ by the parties.
[3] Miami-Dade County School Board Rule 6Gx13-4C-1.021 is entitled "Fingerprinting of All Employees Prior to Employment."
[4] This definition appears to have also been the formulation favored by the Florida Supreme Court in Pearl v. Florida Board of Real Estate, 394 So.2d 189, 191 (Fla. 3d DCA 1981) (relying on definition of moral turpitude found in Black's Law Dictionary 1160 (rev. 4th ed. 1968)).
[5] Nor are the various lists of disqualifying criminal offenses consistent or static. The presently effective statute, section 1012.315(1), Florida Statutes (2008), does not include vehicular homicide in its list of forty-seven felonies as to which a conviction strictly disqualifies an educator from employment in a position requiring direct contact with students.